CALDWELL LESLIE & PROCTOR, PC
MICHAEL D. ROTH, State Bar No. 217464
  *roth@caldwell-leslie.com*
ALISON MACKENZIE, State Bar No. 242280
  *mackenzie@caldwell-leslie.com*
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
JAMES D. WEINBERGER (admitted *pro hac vice*)
  *jweinberger@fzlz.com*
GISELLE C.W. HURON (admitted *pro hac vice*)
  *ghuron@fzlz.com*
866 United Nations Plaza
New York, New York 10017
Telephone: (212) 813-5900
Facsimile: (212) 813-5901


Attorneys for Defendant The Gap, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JUMBO BRIGHT TRADING LIMITED, A Hong Kong Corporation, and CHARLES ANTHONY PHILIP POZZI, an Individual, <br><br>    Plaintiffs, <br><br>    v. <br><br> THE GAP, INC. and DOES 1-10, <br><br>    Defendants. | Case No. CV12-8932-DDP (MANx) <br><br> **DEFENDANT THE GAP, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** <br><br> Hon Dean D. Pregerson <br> Date: December 3, 2012 <br> Time: 10:00 am <br> Courtroom: 3 |

## __TABLE OF CONTENTS__

TABLE OF AUTHORITIES ..........................................................................ii

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS ...........................................................................2

I.     PLAINTIFFS AND THEIR ALLEGED IP RIGHTS...................................2

II.    THIRD PARTY USE OF PLAINTIFFS' CLAIMED DESIGNS .................4

III.   GAP AND ITS SHOES..................................................................5

IV.   PLAINTIFFS' DELAY ..................................................................6

ARGUMENT ...............................................................................................6

I.     PLAINTIFFS CANNOT SHOW IRREPARABLE INJURY .......................7

II.    PLAINTIFFS CANNOT PREVAIL ON THE MERITS..............................8

A.    Plaintiffs' Trademark Claims Must Fail.......................................8

    1.    Plaintiffs Have Not Proven that They Own Valid Trademarks...........9

    2.    Plaintiffs Cannot Show Likelihood of Confusion..............................14

B.    Plaintiffs' Design Patent Claims Must Fail...................................17

    1.    The Patents are Invalid........................................................17

    2.    There is No Patent Infringement in Any Event ..................................20

C.    Pozzi Cannot Show Likelihood of Success on His Publicity Claim ...........23

III.   THE EQUITIES AND THE PUBLIC INTEREST FAVOR GAP.............24

CONCLUSION.........................................................................................25

## __TABLE OF AUTHORITIES__

### <u>CASES</u>

*Abdul-Jabbar v. Gen. Motors Corp.*,
  85 F.3d 407 (9th Cir. 1996)..................................................................23

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979)..........................................................8, 14

*Aurora World, Inc. v. Ty Inc.*,
  719 F. Supp. 2d 1115 (C.D. Cal. 2009).................................................8

*Auto. Club of S. Cal. v. Auto Club, Ltd.*,
  83 U.S.P.Q.2d 1440 (C.D. Cal. 2007)..................................................12

*BellSouth Corp. v. DataNational Corp.*,
  60 F.3d 1565 (Fed. Cir. 1995)..............................................................10

*BellSouth Corp. v. White Directory Pubs., Inc.*,
  42 F. Supp. 2d 598 (M.D.N.C. 1999)...................................................10

*Bernhardt L.L.C. v. Collezione Europa USA, Inc.*,
  386 F.3d 1371 (Fed. Cir. 2004)........................................................17-18

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir. 1999).........................................................15-16

*Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*,
  716 F.2d 854 (11th Cir. 1983)..............................................................16

*Buti v. Impressa Perosa, S.R.L.*,
  139 F.3d 98 (2d Cir. 1998)......................................................................3

*Caribbean Marine Serv. Co. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988)..................................................................7

*Carson v. Here's Johnny Portable Toilets, Inc.*,
  698 F.2d 831 (6th Cir. 1983)................................................................23

*Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.*,
  921 F.2d 467 (3d Cir. 1990)...................................................................9

*Chrysler Corp. v. Vanzant*,
  44 F. Supp. 2d 1062 (C.D. Cal. 1999)..................................................12

*Citibank, N.A. v. Citytrust*,
  756 F.2d 273 (2d Cir. 1985)....................................................................8

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
  282 F.3d 1370 (Fed. Cir. 2002).......................................................20, 21

*E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.*,
  905 F. Supp. 1403 (E.D. Cal. 1994).....................................................13

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008) ................................................................ 20, 21

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002) ...................................................................... 14

*Filipino Yellow Pages, Inc. v. Asian Journal Publn's, Inc.*,
   198 F.3d 1143 (9th Cir. 1999) ........................................................................ 9

*First Brands Corp. v. Fred Meyer, Inc.*,
   809 F.2d 1378 (9th Cir. 1987) ...................................................................... 13

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
   826 F.2d 837 (9th Cir. 1987) ........................................................................ 14

*Gap Inc. v. G.A.P. Adventures Inc.*,
   100 U.S.P.Q.2d 1417 (S.D.N.Y. 2011) ........................................................ 17

*Genovese Drug Stores, Inc. v. TGC Stores*,
   939 F. Supp. 340 (D.N.J. 1996) .................................................................... 24

*Glow Indus., Inc. v. Lopez*,
   252 F. Supp. 2d 962 (C.D. Cal. 2002) ............................................... 9, 10, 16

*Grand Gen. Accessories Mfg. v. United Pac. Indus. Inc.*,
   732 F. Supp. 2d 1014 (C.D. Cal. 2010) ............................................... *passim*

*Hansen Beverage Co. v. National Beverage Corp.*,
   493 F.3d 1074 (9th Cir. 2007) ...................................................................... 15

*HMH Publ'g Co. v. Brincat*,
   504 F.2d 713 (9th Cir. 1974) ........................................................................ 12

*HMH Publ'g Co. v. Lambert*,
   482 F.2d 595 (9th Cir. 1973) .......................................................................... 9

*Hoover Grp., Inc. v. Custom Metalcraft, Inc.*,
   66 F.3d 299, 302 (Fed. Cir. 1995) ................................................................ 18

*Hycor Corp. v. Schlueter Co.*,
   740 F.2d 1529 (Fed. Cir. 1984) .................................................................... 19

*In re Mann*,
   861 F.2d 1581 (Fed. Cir. 1988) .................................................................... 21

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
   589 F.3d 1233 (Fed. Cir. 2009) .................................................................... 18

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
   287 F.3d 866 (9th Cir. 2002) ........................................................................ 11

*K-Jack Eng'g Co. v. Pete's Newsrack, Inc.*,
   209 U.S.P.Q. 1081 (C.D. Cal. 1980), *supp. sub nom.*
   *K-Jack Eng'g Co., Inc. v. Pete's Newsrack Inc.*,
   209 U.S.P.Q. 386 (C.D. Cal. 1980) .............................................................. 19

*Levi Strauss & Co. v. Blue Bell, Inc.,*
   778 F.2d 1352 (9th Cir. 1985) ........................................................ 12

*Litton Sys., Inc. v. Whirlpool Corp.,*
   728 F.2d 1423 (Fed. Cir. 1984) ...................................................... 20

*Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.,*
   407 F.2d 288 (9th Cir. 1969) .......................................................... 19

*Natural Footwear, Ltd. v. Hart, Schaffner & Marx,*
   760 F.2d 1383 (3d Cir. 1985) ........................................................... 9

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,*
   638 F.3d 1137 (9th Cir. 2011) .......................................................... 6

*New Kids on the Block v. News Am. Publ'g, Inc.,*
   971 F.2d 302 (9th Cir. 1992) ............................................................ 8

*Newton v. Thomason,*
   22 F.3d 1455 (9th Cir. 1994) ........................................................ 23-24

*Pac. Handy Cutter Inc. v. Quick Point Inc.,*
   43 U.S.P.Q.2d 1624 (C.D. Cal. 1997),
   *aff'd,* 178 F.3d 1307 (Fed. Cir. 1998) ......................................... 21

*Payless Shoesource, Inc. v. Reebok Int'l Ltd.,*
   998 F.2d 985 (Fed. Cir. 1993) ........................................................ 21

*Peters v. Active Mfg. Co.,*
   129 U.S. 530 (1889) ................................................................ 17, 22

*Person's Co. v. Christman,*
   900 F.2d 1565 (Fed. Cir. 1990) ........................................................ 3

*Reebok Int'l Ltd. v. Alon,*
   No. 87-CV-6466 (CBM), 1987 WL 123992 (C.D. Cal. Dec. 30, 1987) ...... 16

*Rose Art Indus., Inc. v. Swanson,*
   235 F.3d 165 (3d Cir. 2000) ........................................................... 11

*Sardi's Rest. Corp. v. Sardie,*
   755 F.2d 719 (9th Cir. 1985) ........................................................... 8

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.,*
   532 U.S. 23 (2001) ........................................................................ 8

*Trust Co. Bank v. Putnam Publ'g Grp., Inc.,*
   No. 87-CV-7393 (AHS), 1988 WL 62755 (C.D. Cal. Jan. 4, 1988) ............. 8

*Walt Disney Co. v. GoodTimes Home Video Corp.,*
   830 F. Supp. 762 (S.D.N.Y. 1993) ................................................... 11

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.,*
   529 U.S. 205 (2000) ..................................................................... 11

*Walter v. Mattel, Inc.*,
　　31 F. Supp. 2d 751 (C.D. Cal. 1998),
　　*aff'd*, 210 F.3d 1108 (9th Cir. 2000) ............................................... 17

*Winter v. Natural Res. Def. Council, Inc.*,
　　555 U.S. 7 (2008) ............................................................................. 6, 7

*Yurman Design, Inc. v. PAJ, Inc.*,
　　262 F.3d 101 (2d Cir. 2001) ............................................................. 11

## STATUTES

15 U.S.C. § 1125(a) ............................................................................... 9

15 U.S.C. § 1127 ................................................................................... 3

35 U.S.C. § 102(a) ............................................................................... 18

35 U.S.C. § 102(b) ............................................................................... 17

35 U.S.C. § 103(a) ............................................................................... 19

35 U.S.C. § 112 .................................................................................... 22

35 U.S.C. § 119(a) ............................................................................... 18

35 U.S.C. § 289 .................................................................................... 20

## RULES AND REGULATIONS

37 C.F.R. § 1.56 ................................................................................... 19

Fed. R. Civ. P. 65(c) ............................................................................. 25

Fed. R. Evid. 702 ................................................................................. 13

Fed. R. Evid. 802 ................................................................................... 7

Fed. R. Evid. 1002 ................................................................................. 7

California Civil Code § 3344 ................................................................. 23

## OTHER AUTHORITIES

J. Thomas McCarthy,
　　MCCARTHY ON TRADEMARKS & UNFAIR COMP. (4th ed. 2012) ............. 14, 16

J. Thomas McCarthy,
　　THE RIGHTS OF PUBLICITY & PRIVACY (2d ed. 2012) .................................. 23

Restatement (Second) of Torts (1977) ................................................... 23

This case involves Plaintiffs' attempt to use general claims of "intellectual property" rights to block The Gap, Inc. ("Gap"), a major retailer of reasonably priced, quality fashion and footwear branded with the famous GAP trademark, from selling legal products inspired by generic shoe styles like those sold by dozens of companies, including Plaintiffs. In its order denying Plaintiffs' *ex parte* application for a temporary restraining order, the Court made clear that Plaintiffs were required to "*demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief" and that any reliance on any presumption of harm was not sufficient to meet this standard. Order at 3, 4. The Court then went on to reject Plaintiffs' evidence of claimed irreparable harm as insufficient. *Id*. at 4-5. Now back for a second bite at the apple, Plaintiffs' motion for a preliminary injunction promises to remedy the failures of their prior attempt to obtain injunctive relief. Like its predecessor, Plaintiffs' motion falls far short.

Indeed, despite the Court's clear warning that the evidence relied upon by Plaintiffs in support of their TRO application was insufficient, Plaintiffs' "new evidence" consists of *a single page email* no different in substance from what was previously submitted. Plaintiffs' second motion thus suffers from the same flaws as their first, and should be denied accordingly. Nor can Plaintiffs show likelihood of success on the merits. On Plaintiffs' trademark claims, they have not proven that they own valid trademarks or that Gap uses any alleged trademark of Plaintiffs in a manner that is likely to cause confusion in violation of Section 43(a) of the Lanham Act. On Plaintiffs' design patent claims, the patents-in-suit are invalid on multiple grounds, and Plaintiffs' arguments to the contrary are unavailing. In the alternative, there is no infringement, as the Gap shoes Plaintiffs claim are infringing differ from the patents in legally material ways. Finally, Plaintiff Pozzi's right of publicity claim fails because he has not proven that Gap is using his name, likeness or image to advertise and promote its products. Nor are the equities on Plaintiffs' side: Plaintiffs have not shown that they will be harmed by the *status quo* and their litigation

conduct is highly questionable. In contrast, an injunction would cause harm to Gap and disrupt its business. And no public interest would be served by any injunction. Plaintiffs' motion should be denied.

## STATEMENT OF FACTS

## I.     PLAINTIFFS AND THEIR ALLEGED IP RIGHTS

Since July 2010, Plaintiffs have offered and sold loafers under the brand CP Charles Philip Shanghai. (First Bates Dec. Ex. I-J; Declaration of James D. Weinberger ("Weinberger Dec.") Ex. 1.)[1] Plaintiffs sell two styles of loafer, one with tassels and one without, as shown here:



(the "CP Loafers"). (Weinberger Dec. Exs. 1, 2.) The CP Loafers combine "Moroccan babush, the elegance of the English gentry slipper and the freshness of striped cottons and soft colorful linens" into a "modern take of the classic slipper . . . ." (*Id*. Ex. 1.) Plaintiffs do not in this action claim to own the right to sell or market English style loafers. (TRO Rep. Br. at 2.) Each pair of CP Loafers features CP

_____

[1] We refer to documents in the record as follows: Plaintiffs' Brief in Support of *Ex Parte* Application for a TRO/Preliminary Injunction is "TRO Br." Gap's opposition is "TRO Opp. Br." Plaintiffs' Reply is "TRO Rep. Br." The October 22, 2012 Declaration of Andrea Bates is the "First Bates Dec."; the October 24 declaration is the "Second Bates Dec."; and the November 5 declaration is the "Third Bates Dec." The declaration of Charles Pozzi is "Pozzi Dec." Plaintiffs' current brief is the "PI Br." For the convenience of the Court, the declarations submitted by Gap in opposition to the instant motion are self-contained and do not refer back to previously-filed declarations from the TRO application.

1   CHARLES PHILIP SHANGHAI on the insoles and CHARLES PHILIP on the

2   soles. (Weinberger Dec. Ex. 2.) Plaintiffs use different varieties of striping in the CP

3   Loafers. In some models, striping is narrow, with light blue and white stripes; in

4   others, the striping is thicker, and uses a darker, navy blue together with white. (*Id.*)

5   Nor do Plaintiffs use their stripes in the same way in each model, with some shoes

6   having striping that goes all the way around the inside of their shoes, and others with

7   no striping on the heel. (*Compare* First Bates Dec. Exs. F, G, H, I, J, L, Q,

8   Weinberger Dec. Exs. 1, 2.) The shoes also feature a three vertical stripe design on

9   the shoe rim near the heel:



15   (*Id.*) The CP Loafers are sold in department stores like Saks Fifth Avenue and

16   Neiman Marcus (Third Bates Dec. Exs. C, E), and Plaintiffs claim U.S. sales of

17   37,000 pairs amounting to $1.2 million since launch in July 2010. (Pozzi Dec. ¶ 9.)[2]

18       Plaintiffs have no registered trademarks. Rather, they have a variety of

19   pending applications, namely: (i) CP CHARLES PHILIP (the "CP Mark"), applied

21   _____

22   [2] Notwithstanding these facts, Plaintiffs throughout their motion refer to and rely on
their "worldwide" notoriety and sales, *see*, *e.g.*, PI Br. at 1, 5; Third Bates Dec. Ex.

23   E. As Plaintiffs bring no claims under foreign law in this action, their claimed
reputation and sales abroad are totally irrelevant. Under Section 45 of the Lanham

24   Act, "commerce" is defined as "all commerce which may lawfully be regulated by
Congress," 15 U.S.C. § 1127, which is coterminous with the commerce that may be

25   regulated by Congress under the Commerce Clause of the Constitution. *Buti v.
Impressa Perosa, S.R.L.,* 139 F.3d 98, 102 (2d Cir. 1998). Courts apply a related

26   "territoriality" principle, which means that "foreign use has no effect on U.S.
commerce and cannot form the basis for a holding [of priority of trademark use] . . .

27   [T]rademark rights exist in each country solely according to that country's statutory
scheme." *Person's Co. v. Christman,* 900 F.2d 1565, 1568-69 (Fed. Cir. 1990); *see*

28   *also Buti,* 139 F.3d at 103 (noting "the territorial nature of trademark rights").

for based on first use in interstate commerce "at least as early as" August 1, 2010, and[3] (ii) two different striped lining designs, U.S. App. Ser. Nos. 85/602,476 and 85/602,452 (the "Striping"), both based on first use in interstate commerce on July 8, 2010. The Complaint refers to the Striping as Plaintiffs' "Striped Design on the Inside of a Shoe trademark." (Compl. ¶ 17.) The U.S. Patent & Trademark Office ("USPTO") has rejected both applications covering the Striping as, *inter alia*, "ornamental" and not a trademark. (Weinberger Decl. Exs. 3-4.) Plaintiffs also own two design patents, D668849S (the "'849 Patent") and D668850S (the "'850 Patent") (First Bates Dec. Exs. I, J), both filed on September 23, 2011 and registered on October 16, 2012, covering the same "Striped Design on the Inside of a Shoe" shown in the Striping applications (Compl. ¶ 20).

## II.    THIRD PARTY USE OF PLAINTIFFS' CLAIMED DESIGNS

Plaintiffs are not the only company to offer a "modern take" on a classic "English gentry slipper." Many third parties offer such shoes. (Weinberger Dec. Ex. 5.) Nor are Plaintiffs the only company using blue and white striping as a lining for their shoes, as shown by way of example here:



(Weinberger Dec. Ex. 6, which contains these and many additional shoes using striped linings in the manner used by Plaintiffs.)

---

[3] Plaintiffs also claim common law rights in CHARLES PHILIP; we refer to CP CHARLES PHILIP and CHARLES PHILIP together as the "CP Marks."

## III.  GAP AND ITS SHOES

Gap is one of the nation's leading retailers of clothing and footwear, offering among others style-conscious but affordable products inspired by fashion trends, like so many others in the retail industry. (Declaration of Chris Hubbard ("Hubbard Dec.") ¶¶ 2-3.) Following and inspired by several shoe styles on the market, including those of Plaintiffs, Gap in July 2012 began offering a seasonal series of loafers in the following representative styles, among others:



(*Id.* ¶ 4 & Ex. 1.) The Gap loafers include a number of different linings. (*Id.*) Certain of Gap's shoes contain a blue and white vertically striped lining, as shown in the product on the far right. (*Id.* ¶ 5 & Ex. 1.) Others have striped linings, but different colors, such as the blue and yellow shown in the product second from the left. Certain of Gap's shoes have no striped lining at all, as shown on the products on the far left and second from the right, above. Certain of Gap's shoes, both with and without striped liners, contain a small industry-typical production stamp on the inside of the shoe identifying the internal Gap reference "Phillip Moccasin Slipper," "Phillip Slipper" or "Novelty Philli" along with a style number, origin of production and season code for Gap's internal use. (*Id.* ¶ 6 & Ex. 1.) These stamps are very difficult to see:



1  (*Id*. Ex. 1.) Moreover, at no time did Gap use the "Phillip" designation to promote,

2  advertise or market its products (*id*.), nor can "Phillip" be used to locate the shoes

3  online. (Weinberger Dec. Ex. 7.) Gap's shoes do not have a three stripe design on

4  the shoe rim near the heel area. (Hubbard Dec. ¶ 5 & Ex. 1.) Gap's shoes do not say

5  CHARLES PHILIP anywhere, and Gap did not intend to confuse consumers into

6  thinking that Gap had any connection to Plaintiffs. (*Id*. ¶ 7.) Gap has ceased

7  manufacture of loafers with either internal striping or the "Phillip" stamp. (*Id*. ¶ 8.)

8  **IV.   PLAINTIFFS' DELAY**

9         Plaintiffs first sent a demand letter objecting to the sale of Gap's loafers on

10  July 24, 2012. (First Bates Dec. ¶ 8.) Plaintiffs do not state precisely when they first

11  learned of Gap's products. (*Id*. ¶¶ 6-7.) Gap sent its initial response on July 31 and a

12  substantive response on August 16. (Weinberger Dec. ¶¶ 9-10.) The parties then

13  spoke several times between then and September 20, at which point Plaintiffs said

14  that an agreement must be reached by October 4 or they would sue. (*Id*. ¶¶ 11-12.)

15  No agreement was reached by that date, but Plaintiffs did not file this action until

16  October 17 and did not file their *ex parte* application for a temporary restraining

17  order until October 22. (*Id*. ¶¶ 12-15.) The Court denied Plaintiffs' application on

18  October 25. (*Id*. ¶ 16.) Plaintiffs then waited over a week to file their motion for a

19  preliminary injunction, missing the earliest hearing date of November 26, despite

20  adding only a one page exhibit and no other additional evidence to the motion. (*Id*.)

21                                    **ARGUMENT**

22         "A plaintiff seeking a preliminary injunction must establish that he is likely to

23  succeed on the merits, that he is likely to suffer irreparable harm in the absence of

24  preliminary relief, that the balance of equities tips in his favor, and that an injunction

25  is in the public interest." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,

26  638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Winter v. Natural Res. Def. Council,*

27  *Inc.,* 555 U.S. 7, 20 (2008)). "A preliminary injunction is an extraordinary remedy

28

never awarded as of right." *Winter*, 555 U.S. at 9. Plaintiffs do not come close to meeting this standard.

## I.    PLAINTIFFS CANNOT SHOW IRREPARABLE INJURY

As the Court held in its order denying Plaintiffs' application for a temporary restraining order, "a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief," Order at 3 (quoting *Caribbean Marine Services Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (internal quotation marks omitted), and the previously available presumption of irreparable harm where a trademark plaintiff showed likelihood of success on the merits is no longer available (Order at 3-4, collecting cases). The Court further examined what little evidence of claimed injury Plaintiffs did submit, namely the letter from Plaintiffs' distributor Peter Grueterich. Order at 4-5. The Court *rejected* such evidence as "speculative," "conclusory" and lacking specificity in terms of lost revenue and whether and how consumers had been confused. *Id*. To the extent that Plaintiffs rely on such "evidence" again, their claim should fail for the same reasons.

Plaintiffs pay lip-service to the Court's order, but they fail to offer anything substantively different. Indeed, the ***only*** "new" evidence is an email from someone named "Lizzette" (her last name is either Hernandez or Kattan – the email is unclear) who claims to be an officer of one of the Plaintiffs (Third Bates Dec. Ex. E).[4] She states in conclusory, speculative fashion and with no evidentiary support that "JTBL has been irreparably damaged" because Plaintiffs' product is "high end" and Gap's is not, and that each sale of Gap's "counterfeit" shoes "is representative of a lost sale by Jumbo Bright" equaling "hundreds of thousands of dollars in lost

---

[4] This email, along with the letters and other documentation submitted by third parties in support of Plaintiffs' motion, fails to meet evidentiary standards. Testimony must be in the form of *declarations*, submitted under penalty of perjury, not unaddressed emails and undated letters, in order to pass the burdens of authentication and avoid the consequences of the hearsay rule. *See* Fed. R. Evid. 802, 1002.

1   sales." *Id*. Nor does she explain why any alleged lost sales cannot be compensated

2   by monetary damages at trial, as opposed to an injunction now. *Id*. This is no

3   different than the already-rejected conclusory, speculative statements of Mr.

4   Gruerterich and does not meet the Court's stated need for specific, demonstrative

5   evidence of injury. Order at 2-5. *See also Aurora World, Inc. v. Ty Inc.*, 719 F.

6   Supp. 2d 1115, 1169 (C.D. Cal. 2009) (holding that plaintiff failed to prove

7   irreparable harm where it offered insufficient evidence of an established reputation,

8   lost sales and lost market share); *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 725

9   (9th Cir. 1985) (testimony from owner of plaintiff's business as to general

10  reputational injury not sufficient to show irreparable harm).[5]

11  **II.    PLAINTIFFS CANNOT PREVAIL ON THE MERITS**

12  **A.    Plaintiffs' Trademark Claims Must Fail**

13          Trademarks represent "a limited property right in a particular word, phrase, or

14  symbol." *New Kids on the Block v. News Am. Publ'g, Inc.,* 971 F.2d 302, 306 (9th

15  Cir. 1992).[6] Trademark protection extends to trade dress, namely, the elements of a

16  product's design or packaging that serve source identifying functions. *See TrafFix*

17  *Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001). Here, Plaintiffs rely on

18  _____

19  [5] Moreover, any claim of irreparable harm is negated by Plaintiffs' delay in filing
    suit and seeking injunctive relief. *See, e.g., Trust Co. Bank v. Putnam Publ'g Grp.,*
20  *Inc.*, No. 87-CV-7393 (AHS), 1988 WL 62755, *7 (C.D. Cal. Jan. 4, 1988) (citing
    *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985)). Plaintiffs admit that
21  they learned of Gap's shoes at least as early as July 2012 but did not file suit until
    October 17 and did not move for injunctive relief until October 22 (Weinberger Dec.
22  ¶¶ 9-15) because they were waiting, at the expense of running into court on their
    trademark and right of publicity claims, for their undisclosed design patents to issue
23  (TRO Rep. Br. at 2). Plaintiffs also waited an extra week before filing this motion
    after the TRO was denied, with no explanation and no substantive changes to their
24  papers. Weinberger Dec. ¶ 16. This conduct belies Plaintiffs' claim of irreparable
    harm. *See, e.g., Citibank,* 756 F.2d at 277 (ten week delay "undercuts the sense of
25  urgency that ordinarily accompanies a motion for preliminary relief and suggests
    that there is, in fact, no irreparable injury") (citation omitted).
26  [6] Generic terms and designs are not protectable. *See AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341, 349 (9th Cir. 1979). As such, Plaintiffs admit that the shape and style
27  of the CP Loafers is not protectable as a trademark, nor do they seek to prevent Gap
    from selling English style loafers. TRO Rep. Br. at 2.

28

two alleged marks: the interior striping trade dress (the Striping), and the CP Marks (CP CHARLES PHILIP and CHARLES PHILIP). To prevail on an unfair competition claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiffs must demonstrate (1) ownership of a valid mark or trade dress, (2) use by the defendant of the same or similar mark or trade dress, and (3) likelihood of confusion. *HMH Publ'g Co. v. Lambert*, 482 F.2d 595, 598 (9th Cir. 1973).

### 1.  Plaintiffs Have Not Proven that They Own Valid Trademarks

Here, Plaintiffs cannot prove ownership of valid rights for either the CP Marks or the Striping and therefore cannot establish success on the merits.

<u>Plaintiffs Have Not Provided Evidence of Market Penetration for the CP Marks or Striping.</u> Federal trademark registration creates a presumption of validity of the registered mark. *See Filipino Yellow Pages, Inc. v. Asian Journal Publn's, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999). Plaintiffs have no registrations and thus their claimed marks carry no presumption of validity. *Id.* As Judge Morrow has held, "[u]nregistered marks must achieve market penetration to be protectable: This is determined by examining the trademark user's volume of sales and growth trends, the number of persons buying the trademarked product in relation to the number of potential purchasers, and the amount of advertising." *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 983 (C.D. Cal. 2002) (citing *Natural Footwear, Ltd. v. Hart, Schaffner & Marx,* 760 F.2d 1383, 1398-99 (3d Cir. 1985); *Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.,* 921 F.2d 467, 473 (3d Cir. 1990)).

Plaintiffs have not met their burden of proving market penetration for either the CP Marks or Striping. Plaintiffs have asserted that 37,000 pairs of CP Loafers were sold for $1.2 million in U.S. sales since July 2010 (Pozzi Dec. ¶ 9), without any supporting evidence. In an effort to create the perception that their sales are substantial, Plaintiffs claim that their $130 loafers are "high end," but other retailers sell similar shoes at higher prices. Weinberger Dec. Ex. 8. Plaintiffs have provided no evidence of sales trends or of the size of the footwear market to allow the Court

MEMORANDUM IN OPPOSITION TO PRELIMINARY INJUNCTION

to analyze the claimed sales relative to the total market. And for good reason: publicly available statistics show that the U.S. footwear market had nearly *2.1 billion* pairs of shoes sold in 2011. Weinberger Dec. Ex. 9. The value of U.S. shoe sales in 2011 was *$66.1 billion*. *Id*. Assuming that Plaintiffs sold an equal number of shoes over the two year period in which they have been available, Plaintiffs' sales make up approximately *.0009%* of the industry total, a miniscule total relative to the market. Moreover, Plaintiffs do not advertise their products and thus have no advertising expenditures. TRO Rep. Br. at 4-5. This negates the possibility that Plaintiffs, on this record, can show that they own valid trademarks.[7]

<u>The Striping is an Unprotectable, Generic Design.</u> It is well settled that a manufacturer cannot reclaim a generic design such as pinstripes from the public and monopolize it as its own trademark. *See*, *e.g*., *BellSouth Corp. v. White Directory Pubs., Inc*., 42 F. Supp. 2d 598, 612 (M.D.N.C. 1999) (A user "cannot pull [a design] out of the public domain simply by introducing" evidence that certain individuals associate the design with that user. "Where the record so conclusively establishes that a term was placed in the public domain as a generic symbol . . . and has been so used for over thirty years by all in the industry . . . [evidence showing association in the minds of limited users] cannot serve even to create a genuine issue as to the status of the mark."); *BellSouth Corp. v. DataNational Corp*., 60 F.3d 1565, 1570 (Fed. Cir. 1995) (regarding logo design, "where, as here, the alleged mark is in the public domain [it is] thus unable to achieve trademark status"). Blue and white stripes are used by many clothing companies and have been for decades. *See*, *e.g*., Weinberger Dec. Ex. 10. Plaintiffs cannot retake stripes for themselves simply by putting them on shoes. The Striping is therefore unprotectable.

---

[7] Plaintiffs could overcome their evidentiary failures by proof of a national reputation. However, as was the case in *Glow*, the proof isn't there: "the generalized nature of the evidence presented precludes drawing inferences regarding the strength of the mark's resulting reputation." 252 F. Supp. 2d at 985.

1        <u>Plaintiffs Have Not Used the Striping Consistently, Barring Protection.</u> A

2    party, such as Plaintiffs here, may seek trade dress protection for an entire product

3    line. However, they can only do so by establishing that the "overall look" in each

4    separate product is "consistent." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101,

5    116 (2d Cir. 2001) (citing *Walt Disney Co. v. GoodTimes Home Video Corp.,* 830 F.

6    Supp. 762, 766 (S.D.N.Y. 1993)). *See also Rose Art Indus., Inc. v. Swanson,* 235

7    F.3d 165, 172 (3d Cir. 2000); *Grand Gen. Accessories Mfg. v. United Pac. Indus.*

8    *Inc.*, 732 F. Supp. 2d 1014, 1028 (C.D. Cal. 2010) (Pregerson, J.). Concern for

9    protecting competition is in this context particularly "acute." *Yurman*, 262 F.3d at

10   116. Here, Plaintiffs have not used their stripes consistently, varying between dark

11   and light blues, thin and thick stripes, with some lining going all the way around the

12   heel and others stopping short of the heel on both sides. *Compare* First Bates Dec.

13   Exs. F, G, H, I, J, L, Q, Weinberger Dec. Exs. 1, 2. Such inconsistency is fatal to

14   any claim of protection for the Striping.

15       <u>The Striping Has Not Acquired Secondary Meaning, Barring Protection.</u> In

16   order for a design to qualify for protection, the design must function as a *mark* – that

17   is, a signifier of source – a meaning secondary to its primary meaning of being

18   simply a design. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216

19   (2000). Determining whether a design has acquired secondary meaning depends

20   upon a number of factors designed to assess whether the public has come to

21   associate the design with a particular source as opposed to viewing it merely as a

22   design *per se*: "(1) whether actual purchasers of the product bearing the claimed

23   trademark associate the trademark with the producer, (2) the degree and manner of

24   advertising under the claimed trademark, (3) the length and manner of use of the

25   claimed trademark, and (4) whether use of the claimed trademark has been

26   exclusive." *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th

27   Cir. 2002) (internal citation and quotation marks omitted). "Mere 'association' is not

28   sufficient to establish secondary meaning. Instead a specific type of association must

1  be proven. . . . where individuals viewing the design over which trademark rights are

2  asserted associate that design *with a single source . . . .*" *Chrysler Corp. v. Vanzant*,

3  44 F. Supp. 2d 1062, 1073 (C.D. Cal. 1999) (finding for defendant in case involving

4  alleged infringement of car grill design due to plaintiff's failure to show secondary

5  meaning despite evidence of copying by defendant) (citing *Levi Strauss & Co. v.*

6  *Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir. 1985)). Secondary meaning must be

7  established as of the time the defendant enters the market. *See Levi Strauss*, 778

8  F.2d at 1357; *HMH Publ'g Co. v. Brincat,* 504 F.2d 713, 715, 719 (9th Cir. 1974).

9  Here, there is no proof that the Striping had secondary meaning *at any time*, let

10  alone by July 2012 when Gap entered the market with its shoes.[8]

11      *Consumer Evidence.* Plaintiffs do not rely on a consumer survey or study, but

12  rather Pozzi's declaration. Self-serving declarations from the plaintiff do not

13  substitute for consumer evidence. *See Grand Gen.*, 732 F. Supp. 2d at 1027-28. As

14  to any association among actual purchasers of the CP Loafers or Striping with

15  Plaintiffs, we have only the handful of Pozzi's attached "celebrity" and purported

16  "expert" letters (not declarations) obtained by him that purport to characterize the

17  striped lining as "iconic" or a "favorite" feature. Pozzi Dec. Ex. A. These letters do

18  not claim that the Striping was "iconic" as of July 2012 and do not show that

19  consumers generally associate the Striping with Plaintiffs. The opinions of Pozzi's

20  so-called industry "experts" are just that, bare opinions, unsupported by facts, data

21

22  ───────────────

23  [8] In August 2012, the USPTO denied registration to the Striping applications
   because the claimed designs were ornamental and not inherently distinctive,
   requiring proof of secondary meaning for registration. Weinberger Dec. Exs. 3, 4.

24  Plaintiffs' bald assertion that they will be able to overcome these objections (TRO
   Rep. Br. at 3) is argument, not fact, and does not change that Plaintiffs do not own

25  any registration covering the Striping. Nor does it support the idea that the Court
   should accept the argument of Plaintiffs' counsel over the reasoned judgment of the

26  USPTO, which is charged with making determinations on the registrability of
   trademarks. *See*, *e.g.*, *Auto. Club of S. Cal. v. Auto Club, Ltd.*, 83 U.S.P.Q.2d 1440,

27  1443 (C.D. Cal. 2007) (recognizing that USPTO determination that mark was
   generic was "instructive" to the Court).

28

or reliable methodology that would permit the Court to consider them under Fed. R. Evid. 702. In other words, Plaintiffs have provided no consumer evidence at all.

*Advertising.* Plaintiffs have no advertising, let alone any advertising emphasizing the Striping, as would be required to credibly argue that consumers associate a blue-and-white striped vertical lining with a single source of goods. *See E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403, 1415 (E.D. Cal. 1994) (finding no secondary meaning where mark owner had no consumer advertising). Rather, Plaintiffs rely on press clippings and other materials attached at Pozzi Dec. Exs. B and C and Third Bates Dec. Ex. A, none of which refer to or emphasize the Striping, as opposed to Plaintiffs generally. *See First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) (because advertising campaign had not stressed the claimed trade dress, no inference of secondary meaning); *Grand Gen.*, 732 F. Supp. 2d at 1028. Some of the documents show Plaintiffs' shoes on models, which makes it impossible to see the Striping at all. Moreover, the majority of press mentions shown at Pozzi Dec. Ex. B and Third Bates Dec. Ex. A are from foreign publications, rendering them irrelevant to an understanding of what U.S. consumers think, *see* note 2, *supra*, despite Plaintiffs' unsubstantiated statement that "the fashion industry is global and consumers in the U.S. will often look to foreign trends when deciding what to purchase" (PI Br. at 5). Moreover, many of the web printouts in Pozzi Dec. Ex. C are either undated or dated *after* July 2012, rendering them irrelevant for purposes of determining secondary meaning *prior* to that date. *See*, *e.g.*, Fash-Obsession: Charles Philip Shanghai Slippers (Sept. 3, 2012), Cool Elegance: Charles Philip Shanghai Slippers (Aug 23, 2012), Haus Rihanna (Aug. 16, 2012), The Housewife Wannabe (Sept. 2012). Other exhibits to the Pozzi declaration do not say anything about the CP Loafers at all, such as eBay listings for used pairs. In other words, no advertising evidence here supports a finding of secondary meaning.

*Length of Use.* Plaintiffs also admit that the CP Loafers have been on sale for just two years, which weighs strongly against a finding of secondary meaning. *See, e.g.*, *Grand Gen.*, 732 F. Supp. 2d at 1027-28 (no secondary meaning despite six years of use between product launch and filing of suit).

*Exclusivity.* There *is* ample evidence in the record that Plaintiffs' Striping is *not* exclusive. Weinberger Dec. Ex. 6. And there is no evidence that Plaintiffs have *prevented* third party use of these claimed marks *prior to July 2012*, despite the demand letters attached at Second Bates Dec. Ex. B. *See* 3 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Comp. § 17:17 (4th ed. 2012) ("McCarthy") ("if, through failure to prosecute, a mark continually loses 'strength' and 'distinctiveness,' it will eventually hemorrhage so much that it dies as a mark"). Plaintiffs' use of the Striping is not exclusive.

Plaintiffs cannot show secondary meaning for the Striping.

## 2. Plaintiffs Cannot Show Likelihood of Confusion

In order to prevail on the merits, Plaintiffs must also show that there is a likelihood of confusion resulting from the total effect of Gap's product on the eye and mind of an ordinary purchaser. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987). "[A]n *appreciable* number of people" must be likely to be confused. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002) (emphasis in original). Given that the source of Gap's shoes is clearly identified and that the shoes are sold only in Gap's stores and website, no confusion is likely. An analysis of the most relevant likelihood of confusion factors set out in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), confirms this.

Strength of the Marks. The Striping cannot function as a trademark (*see* Section II.A.1, *supra*), leaving only the claimed CP Marks[9] as even eligible for

---

[9] Plaintiffs appear to have abandoned their claim to the mark PHILIP alone. To the extent that they have not, for the reasons set forth in Gap's opposition to Plaintiffs' (footnote continued)

protection. But absent a registration Plaintiffs are left to prove their rights; as shown above, without proper evidence of market penetration they have failed to do so. Any claim that the CP Marks are strong or famous is simply unsupported in the record.

Similarity of the Marks. Plaintiffs try to blur the distinction between the parties' *shoes*, which they admit are generic English loafers, and the *alleged marks*. But Plaintiffs do not contend, nor could they, that Gap's loafers use CP, CHARLES PHILIP or Plaintiffs' three-stripe rim design on its products. Nor do Plaintiffs attempt to distinguish between the Gap loafers with stripes and those without. Rather, Plaintiffs rely on the presence of interior stripes in some styles of Gap's loafers to accuse all of them. In addition, the stripes in those Gap shoes which have blue and white linings are not identical to those used by Plaintiffs (*compare* Hubbard Dec. Ex. 1 *with* Weinberger Dec. Ex. 2) and striped linings are used by dozens of other shoe companies in any event. *Hansen Beverage Co. v. National Beverage Corp.*, 493 F.3d 1074, 1079 (9th Cir. 2007) (noting that in a "crowd" of "similar marks on similar goods" confusion between any two in the crowd is unlikely because customers "have learned to carefully pick out one from the other") (citation omitted). Plaintiffs also rely on the presence of "Phillip" stamped inconspicuously in hard-to-read typeface in the lining in Gap's shoes (not all of which have striped linings), which is not how Plaintiffs use their CP Marks. Indeed, there is no evidence that Plaintiffs use "Phillip" or "Philip" at all. On a preliminary injunction motion, where Plaintiffs must carry a heavy burden to justify the extraordinary relief sought, this is not enough to establish similarity.

Actual Confusion. There is no evidence of actual confusion, a telling sign that confusion is not likely given that the products have been available for months. *See, e.g., Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1050 (9th

---

TRO motion, such claim is without basis in any event. TRO Opp. Br. at 15.

Cir. 1999). Instead, Plaintiffs rely on the undated Grueterich letter which claims that the Gap shoes are "causing confusion" because people are buying the less expensive Gap product instead of Plaintiffs' product. Third Bates Dec. Ex. C. This evidences *competition*, not confusion. Plaintiffs also rely on an undated blog post (with no identifiable URL) which characterizes the Gap shoes at issue as "strikingly similar" to that of Plaintiffs. *Id*. Ex. D. But even if this document were admissible, the author plainly knows that one product is Plaintiffs' and the other is Gap's, and there is nothing to suggest that she was *confused*. Rather, this highlights that the author knows the *difference* between the products. This evidence negates likelihood of confusion. *See Glow*, 252 F. Supp. 2d at 999-1000 (citations omitted).

    Intent. Plaintiffs claim without support that Gap's conduct was intended to make consumers think that Gap's loafers were made by Plaintiffs. It was not. Hubbard Dec. ¶ 7. Moreover, one cannot be liable for using what is not protected under the law. *See* 4 MCCARTHY § 23:122 ("The first principle of unfair competition law is that everything that is not protected by an intellectual property right is free to copy."); *see also Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir. 1983) (affirming denial of preliminary injunction and bench verdict of no secondary meaning despite evidence of copying of plaintiff's shoe designs: "[T]here is absolutely nothing illegally or morally reprehensible about exact copying of things in the public domain.") (cited by *Reebok Int'l Ltd. v. Alon*, No. 87-CV-6466 (CBM), 1987 WL 123992 (C.D. Cal. Dec. 30, 1987) (denying preliminary injunction in action alleging sale of infringing shoes)). Plaintiffs' Striping does not, as a matter of law, function as a trademark. *See* Section II.A.1, *supra*. Nor does the mere presence of the word "Phillip" on a hard-to-spot location inside Gap's product indicate intentional confusion. If Gap had intended to confuse, it would have promoted its shoes as CP CHARLES PHILLIP SHANGHAI, not used the different spelling "Phillip" or "Philli" as a production style name that was not visible to the

1  public or used in marketing, and it would not have used its famous GAP mark,

2  either. But it did not so intend. Hubbard Dec. ¶¶ 6-7 & Ex. 1.

3      Other Factors. None of the other *Sleekcraft* factors favor Plaintiffs, either:

4  although both parties sell loafers, they are sold at price points that differ by nearly

5  $100; Plaintiffs' shoes are sold in stores like Saks and Bloomingdales, Gap's

6  products are sold only at Gap's stores and website, so there is no overlap in trade

7  channels; there is no evidence that the quality of Gap's loafers is inferior; and there

8  is no claim that Plaintiffs intend to expand to sell their shoes in Gap or any store like

9  it. Plaintiffs do not contest that the Gap loafers are marketed as products of the

10  famous company Gap, *see Gap Inc. v. G.A.P. Adventures Inc.*, 100 U.S.P.Q.2d

11  1417, 1429 (S.D.N.Y. 2011) (finding GAP to be a famous brand), sold on Gap's

12  website and in Gap stores and not at any store that also sells the CP Loafers. *See*

13  *Walter v. Mattel, Inc.*, 31 F. Supp. 2d 751, 760 (C.D. Cal. 1998), *aff'd*, 210 F.3d

14  1108 (9th Cir. 2000) (no likelihood of confusion where famous MATTEL and

15  BARBIE marks used with PEARL BEACH).

16      Plaintiffs cannot establish likelihood of confusion.

17  **B.**    **Plaintiffs' Design Patent Claims Must Fail**

18      Nor can Plaintiffs succeed on their design patent infringement claim. To

19  avoid invalidity, they must show differences between the patented designs and the

20  prior art; to prove infringement, they need an ordinary observer to overlook

21  differences of the same or larger magnitude. The law is clear that Plaintiffs cannot,

22  as they would like, have it both ways. *See Peters v. Active Mfg. Co.*, 129 U.S. 530,

23  537 (1889) ("That which infringes, if later, would anticipate, if earlier.")

24      **1.**    **The Patents are Invalid**

25      Anticipation: The On-Sale Bar. A design patent owner "loses his or her right

26  to a patent if the invention was 'on sale in this country, more than one year prior to

27  the date of the application for patent in the United States.'" *Grand Gen.*, 732 F.

28  Supp. 2d at 1021-23 (citing 35 U.S.C. § 102(b)); *see also Bernhardt L.L.C. v.*

1   *Collezione Europa USA, Inc.*, 386 F.3d 1371 (Fed. Cir. 2004). Anticipation of this

2   type is found if an ordinary observer would find the patented designs to be the same

3   "in all material respects" to the prior art; "[m]inor variations . . . are insufficient to

4   preclude a finding of anticipation because they do not change the overall visual

5   impression of the shoe." *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d

6   1233, 1241 (Fed. Cir. 2009) (shoe design patent invalid due to anticipation).

7   Plaintiffs define the shoe designs claimed in their patents as the same "striped

8   design on the inside of a shoe as well as the look and feel of the slipper and tassel

9   shoe design" set forth in the Striping trademark applications, *see* PI Br. at 11 &

10  Compl. ¶ 20, which applications are based on actual use of these shoe designs in

11  U.S. commerce on July 8, 2010 – more than one year prior to the U.S. filing date of

12  the patents, September 23, 2011.[10] *Compare* First Bates Dec. Exs. G, I and J. Given

13  this admission, Plaintiffs' design patents are invalid pursuant to Section 102(b). *See*

14  *Grand Gen.*, 732 F. Supp. 2d at 1021-22.

15       Anticipation: Known or Used By Others. A patent is also invalid if the

16  claimed design was "known or used by others in this country . . . before the

17  invention thereof by the applicant for patent." 35 U.S.C. § 102(a); *see Hoover Grp.,*

18  *Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 302 (Fed. Cir. 1995). The same

19  ordinary observer test that applies to the on-sale bar applies here. *See Int'l Seaway*,

20  589 F.3d at 1241. Plaintiffs' design patents are anticipated by the public use claimed

21  in the Striping applications, which disclose the same designs in all material respects:

22  the shoe shape, tassels and striping all the way around the inside of shoe claimed in

23  the '849 Patent are disclosed in U.S. App. 85/602,452; the shoe shape, striping in

---

[10] The fact that the design patents claim priority dates of certain foreign design rights is irrelevant as the on-sale and public use bars relate to the U.S, not foreign, filing date. *See* 35 U.S.C. § 119(a).

only middle and front portion of shoe inside, no tassels and striped ticking on upper rim claimed in the '850 Patent are disclosed in App. Ser. No. 85/602,476.

Obviousness. Even if the Court accepts Plaintiffs' false statement that the patented designs are different from those disclosed in the Striping applications (TRO Rep. Br. at 8-9), any differences between them would be obvious to one of ordinary design skill and therefore the patents are invalid. 35 U.S.C. § 103(a). *See also Grand Gen.*, 732 F. Supp. 2d at 1024 (the Court looks at "whether there is a reference to something in existence, the design characteristics of which are basically the same as the claimed design"). Here, the prior art, namely the Striping applications, discloses the design of the CP Loafers and the Striping. Plaintiffs have identified no differences, and there are none, beyond the pattern on the surface of the shoe in the '850 Patent in which Plaintiffs assert no novelty. TRO Rep. Br. at 2. The '849 Patent shows only a gray shoe with no pattern at all.

Inequitable Conduct. Plaintiffs' failure to disclose their prior use and sales to the USPTO constitutes inequitable conduct, another basis for invalidity. *See Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1539-40 (Fed. Cir. 1984); *K-Jack Eng'g Co. v. Pete's Newsrack, Inc.*, 209 U.S.P.Q. 108, 111 (C.D. Cal. 1980), *supp. sub nom. K-Jack Eng'g Co., Inc. v. Pete's Newsrack Inc.*, 209 U.S.P.Q. 386 (C.D. Cal. 1980) (finding design patent separately invalid in view of applicant's concealment of its own use more than one year prior to application date given "the obvious similarity" between the claimed design and the design shown more than a year prior). Disclosure of all information material to patenting is required of all applicants under the applicable regulations, 37 C.F.R. § 1.56, and withholding information that would raise issues of a public use or on sale bar is material. *See Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.,* 407 F.2d 288, 295, 297 (9th Cir. 1969). Plaintiffs' assertion of their earliest use dates to gain priority in filings with the trademark side of the USPTO while withholding this same information from the patent side of the USPTO constitutes inequitable conduct.

1    In the face of these facts, Plaintiffs contend that their patent designs are

2 "novel" and "not the same" as those in the Striping applications, but fail to identify

3 *even one* difference. *See* TRO Rep. Br. at 8-9. Even if true, there would still be

4 inequitable conduct as the Striping was not disclosed to the Examiner, who would

5 have considered it in making his patentability determination. Plaintiffs'

6 unsubstantiated assertions cannot avoid a finding of invalidity of their patents.

7        **2.        There is No Patent Infringement in Any Event**

8    A design patent is infringed when an "ordinary observer" would find that the

9 "accused article embodies the patented design or any colorable imitation thereof."

10 *Grand Gen.*, 732 F. Supp. 2d at 1021 (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*,

11 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc)).[11] The ordinary observer is "aware of

12 the great number of closely similar prior art designs" and "conversant with the prior

13 art," such that "small differences between the accused design and the claimed design

14 are likely to be important." *Egyptian Goddess*, 543 F.3d at 676, 678. A comparison

15 "must encompass the claimed ornamental features of all figures of a design patent,"

16 not just a subset. *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1379

17 (Fed. Cir. 2002). Finally, where a design points to "a field . . . crowded with many

18 references relating to the design of the same type," the scope of protection of the

19 claimed design falls in a "narrow range." *Egyptian Goddess*, 543 F.3d at 676

20 (quoting *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984)).

21    Plaintiffs undertake no effort to set out the ordinary observer analysis,

22 resorting to their familiar tactic of substituting conclusory, overreaching statements

23 for substance. Moreover, Plaintiffs misleadingly use photographs of the CP Loafers

24 that are not part of the '849 and '850 Patents. *Compare* PI Br. at 12 *with* First Bates

---

[11] Because the patents issued on October 16, 2012, Plaintiffs' infringement claim
can only cover sales which took place on or after that date, *i.e.*, when "the term of a
patent" began. 35 U.S.C. § 289.

Dec. Exs. I, J. This is improper, as any analysis of design patent infringement must be narrowly limited to the specific designs claimed therein. *See Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993) (requiring "that an accused design be compared to the claimed design, not to a commercial embodiment"). *See also Pac. Handy Cutter Inc. v. Quick Point Inc.*, 43 U.S.P.Q.2d 1624, 1626 (C.D. Cal. 1997), *aff'd*, 178 F.3d 1307 (Fed. Cir. 1998) ("Design patents are extremely narrow in scope. A design patent's claim is limited to what is shown in the application drawings.") (citing *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988)). Plaintiffs admit as much at TRO Rep. Br. at 8.

Plaintiffs also fail to explain, as required, what they have claimed in their patents; how the claimed designs differ from their own Striping applications, the prior art English-style loafers (Weinberger Dec. Ex. 5) and striped interior linings (*id*. Ex. 6); and whether these differences appear in the accused Gap shoes. *See Egyptian Goddess*, 543 F.3d at 670-71. Without this, the Court simply does not have the tools to conduct an "ordinary observer" analysis, and Plaintiffs' claim fails. Even if there were *no* prior art (there is) and Plaintiffs' designs were completely original (they are not), a comparison of what is claimed in the two patents, *i.e.*, considering *all* figures shown, *Contessa*, 282 F.3d at 1379, reveals numerous differences between the patents, First Bates Dec. Exs. I, J, and the accused Gap shoes shown in Plaintiffs' brief. PI Br. at 12.

'849 Patent: Gap's shoes (PI Br. at 12; Hubbard Dec. Ex. 1 at 4-7) have a contrasting border (yellow against brown) around the upper rim whereas the upper rim disclosed in the '849 Patent (First Bates Dec. Ex. I) is the same color as the shoe upper; Gap's shoes have a contrasting (light/dark) tassel whereas the '849 Patent claims a tassel that is the same color as the upper; the striping inside the Gap shoe is of different widths and colors than the striping in the '849 Patent; the inner soles of the Gap shoes incorporate a white fabric loop extending from the inner sole whereas the '849 Patent has none; the inner sole in the '849 Patent has the words "CP

CHARLES PHILIP SHANGHAI" and the Gap shoes do not; the outer sole of the '849 Patent discloses horizontally across the entire length of a black sole the words "CHARLES PHILIP" with "7" disclosed vertically in equally large font and the Gap shoes do not; and the outer soles of the Gap shoes incorporate a wide stitched border around the entirety of the outer sole whereas the '849 Patent has none.[12]

'850 Patent: The upper rim of the shoe claimed in the '850 Patent (First Bates Dec. Ex. J) discloses Plaintiffs' three stripe design on the back right of the shoe whereas the Gap shoes (PI Br. at 12) have no markings on the rim; the accused Gap shoes have no interior striping at all while the '850 Patent claims vertical striping from toe to heel; the inner soles of the Gap shoes incorporate a white fabric loop extending from the inner sole whereas the '850 Patent has none; the inner sole of the '850 Patent has the words "CP CHARLES PHILIP SHANGHAI" and the Gap shoes do not; the outer sole of the '850 Patent discloses horizontally across the entire length of a black sole the words "CHARLES PHILIP" with "8" disclosed vertically in equally large font and the Gap shoes do not; the outer soles of the Gap shoes incorporate a wide stitched border around the entirety of the outer sole whereas the '850 Patent has none; and while both shoes incorporate animal skin patterns, they are not the same, as the Gap pattern has dark multi-shaped spots in a single color on a light background and the '850 Patent has a three-toned blurred circle design.

Plaintiffs' patent claims require the Court to read their patents more broadly than the USPTO could have conceivably permitted, going against the fundamental maxim of patent law set out in *Peters*, 129 U.S. at 537. Accordingly, Plaintiffs cannot establish infringement of either the '849 or '850 Patents.

---

[12] We presume the presence of the words CP CHARLES PHILIP SHANGHAI in the photographs that comprise the '849 Patent, though it is difficult to see due to poor image quality. This calls into question the validity of the '849 Patent under 35 U.S.C. § 112, which requires definiteness in the form and content of the claims.

## C.     Pozzi Cannot Show Likelihood of Success on His Publicity Claim

Finally, Plaintiff Pozzi cannot establish any of the required elements of a right of publicity claim. To prevail under California Civil Code § 3344, Pozzi must establish that Gap used his "name" or other specified indicia of his identity in a commercial manner. *See Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 414-15 (9th Cir. 1996). Gap did not use the name "Charles Philip," only the common single male name Phillip, which makes no reference to Pozzi whatsoever. Pozzi is not known by "Philip" alone nor does he claim to be. Even if he were known by the name Philip alone, he could not prove that anyone would associate that name with him as opposed to anyone else because many shoe companies use the names PHILIP, PHILLIP, and alternate spellings in connection with identical or similar products.[13] *See* Weinberger Dec. Ex. 11. Even if Gap had used Pozzi's name – and it has not – Gap nevertheless made no use of any additional indicia of Pozzi's identity; such "mere same-nameness alone shall not be sufficient proof of identification." 1 J. Thomas McCarthy, THE RIGHTS OF PUBLICITY & PRIVACY § 4.49 (2d ed. 2012) (requiring "plus factors" pointing to identity); *see also* Restatement (Second) of Torts ("Restatement") § 652C (1977) ("The value of the plaintiff's name is not appropriated by mere mention of it."). Gap also made no commercial or knowing use of the name, as required by California Civil Code § 3344. Gap's limited, internal and inward facing use of "Phillip" as an internal production designation is not commercial under the meaning of the statute. *See* Hubbard Dec. ¶ 6 & Ex. 1; Weinberger Dec. Ex. 7. *See Newton v. Thomason*, 22 F.3d 1455, 1461 (9th Cir.

---

[13] The *only* case that has upheld a right of publicity with use only of a first name is *Carson v. Here's Johnny Portable Toilets, Inc.*, where the court found use of Johnny Carson's identity not from use of his single first name but from additional indicia of his identity – namely, the well-known catchphrase "Heeeeere's Johnny!" 698 F.2d 831, 838 (6th Cir. 1983). No such indicia are present here.

1   1994) (use must be commercial and not coincidental, and identity must be

2   appropriated). Accordingly, Pozzi cannot prevail on his right of publicity claim.

3   **III.   THE EQUITIES AND PUBLIC INTEREST FAVOR GAP**

4        Plaintiffs have not shown that the equities or the public interest favor an

5   injunction. Indeed, the record shows that it is Gap that will suffer the greater harm

6   should an injunction issue. Gap's shoes are sold throughout the U.S. and are

7   committed to stores. Hubbard Dec. ¶ 9. If an injunction were granted now, Gap

8   would have to remove products without replacements, which would be a burden on

9   the current styling season. *Id*. Costs related to removing the shoes, including labor

10  costs and lost earnings on goods not sold, will far exceed the $10,000 bond proposed

11  by Plaintiffs. *Id*. ¶ 10. Further, Gap's products are seasonal, and if Gap is forced to

12  pull its products and ultimately succeeds at trial, it will not be able to simply sell the

13  shoes off at some later point in time because of changed market conditions and

14  fashion trends. *Id*. ¶ 11. "In essence, plaintiff would improperly benefit from a

15  permanent injunction" without ever having proved its claims. *Genovese Drug*

16  *Stores, Inc. v. TGC Stores*, 939 F. Supp. 340, 351 (D.N.J. 1996).

17       While the threat to Gap is clear, Plaintiffs will not be damaged by a

18  continuation of the *status quo*. Plaintiffs have coexisted with many similar striping

19  designs since they first began selling the CP Loafers, and they have failed to identify

20  a single person who thought that Gap's shoes were made by Plaintiffs. Finally,

21  Plaintiffs' questionable litigation tactics – delaying filing suit for a perceived tactical

22  advantage, seeking *ex parte* relief when they knew full well that Gap was

23  represented by counsel, pleading plainly invalid patents, and filing a motion for a

24  preliminary injunction without addressing the substantive deficiencies noted by the

25  Court in its order denying Plaintiffs' TRO application – show their unclean hands.

26  These equities favor Gap.

27       Finally, where, as here, there is no irreparable injury and no possibility that

28  Plaintiffs can prevail on the merits, there is no public interest in an injunction.

1   Indeed, the only "public interest" Plaintiffs identify in their motion is the interest in

2   avoiding consumer confusion, which they have not established. PI Br. at 19.[14]

3                                   **CONCLUSION**

4          Warned on their motion for a temporary restraining order that any future

5   request for preliminary injunctive relief must include concrete, specific evidence of

6   irreparable injury, Plaintiffs have come up with nothing. When faced with proving

7   likelihood of success on the merits, Plaintiffs shortcut the foundational proof

8   required to show that they own rights in their claimed trademarks and patents,

9   relying instead on vague, generalized arguments with no evidentiary support.

10  Plaintiffs' infringement claims are similarly flawed. And their right of publicity

11  claim is so overreaching that it would effectively rewrite the law to prohibit using

12  any first name on any product in any manner and for any purpose. Finally, when

13  compared to Plaintiffs' questionable conduct, Gap will suffer a real hardship and

14  lose a substantial investment if it is enjoined from selling. Gap therefore respectfully

15  requests that the Court deny Plaintiffs' motion for a preliminary injunction.

16  DATED: November 9, 2012          Respectfully submitted,

17                                   CALDWELL LESLIE & PROCTOR, PC
                                                  &
18                                   FROSS ZELNICK LEHRMAN & ZISSU, P.C.

19

20
                                     By:_____
21                                        JAMES D. WEINBERGER

22                                   Attorneys for Defendant The Gap, Inc.

23

24

25  _____

26  [14] In the unlikely event that the Court enters any injunction, despite Plaintiffs'
    arguments, a bond is required here, where there is a demonstrated harm to the
27  potentially enjoined party. *See* Hubbard Dec. ¶¶ 9-11; Fed. R. Civ. P. 65(c). As
    such, Gap requests a $20,000 bond at a minimum.

28